**187 So. 663**

**GOODWIN v. TERRELL.**

**No. 34406.**

March 6, 1939.

Frank E. Powell, of DeRidder, and Sidney I. Foster, of Leesville, for appellant.

J. R. Ferguson, of Leesville, and Cline, Thompson, Lawes & Cavanaugh, of Lake Charles, for appellee.

ROGERS, Justice.

This is an action for the recovery of damages for false arrest and imprisonment and for slander. The damages are

laid in the petition at $10,000. There was judgment against plaintiff rejecting his demands, and he has appealed. We do not find any error in the judgment.

Defendant is the proprietor of a drugstore in which plaintiff was employed as a pharmacist and clerk. Plaintiff alleges that on March 24, 1936, defendant maliciously and without probable cause procured his arrest and imprisonment by the sheriff on a statement that plaintiff had stolen or embezzled money from a safe located in defendant's drugstore; that the sheriff, after arresting plaintiff, without a warrant or other process, searched his clothing and person and compelled him to disrobe; that on the same day, after he was released from custody by the sheriff, defendant falsely, maliciously and without provocation slandered plaintiff by stating that plaintiff "had that morning stolen a twenty and two fives" from defendant's safe; that the statement was first made to plaintiff's wife in the presence and hearing of certain unnamed persons, then to one Eddie Winfree, in the presence and hearing of other unnamed persons, and finally to one Harold Richmond. Plaintiff alleges that the defamatory statement attributed to defendant and the fact that plaintiff had been arrested and searched was circulated among the people of the town in which the drugstore is located and that they reached other towns where plaintiff had formerly resided and had been employed and where he had enjoyed a good name and reputation. Plaintiff further alleges that as a result of the defamatory statements uttered by defendant and his arrest and search by the sheriff at the instigation of the defendant, his good name and his reputation as a pharmacist had been detrimentally affected which, together with the humiliation, mental suffering and injury to his feelings occasioned by the remarks and actions of the defendant, entitle him to the damages prayed for.

Answering the petition, defendant denied every allegation upon which plaintiff's demand is based. He denied that the acts of the sheriff constituted an arrest, or that there was such detention of the plaintiff as to constitute imprisonment. He denied that such acts as were taken by the sheriff were at his instigation, but averred, on the contrary, that they were the result of an investigation instituted by the sheriff himself. He denied the slanderous remarks as alleged by plaintiff. As an alternative defense to the charge of false arrest and imprisonment, defendant pleaded probable cause, setting out the grounds therefor.

The serious charges made by plaintiff against the defendant and the sheriff are not sustained by the evidence. The stories told by plaintiff and his witnesses and defendant and his witnesses, respectively, are wholly at variance. We think, however, from our examination of the record that the testimony preponderates in favor of defendant and that the story told by defendant and his witnesses is more reasonable and logical than the one told by plaintiff and his witnesses.

On plaintiff's charge of false arrest and imprisonment, the facts, as we find them,

may be summarized as follows: The defendant is the sole proprietor of the Phoenix Drugstore in the town of Leesville. Plaintiff had been in his employ as druggist for a period of nineteen months. In the absence of defendant, he was in charge of the business.

On or about February 3, 1936, defendant withdrew from the bank 100 one dollar bills for the purpose of using them as change in his business. He placed this money in the safe located in the office of his drugstore. He went home to dinner and when he returned to the drugstore he discovered that the money was gone. From time to time thereafter defendant continued to miss money from his safe in varying amounts. He called his three employees together, one of whom was plaintiff, told them about the robberies and suggested that they keep the matter quiet but to be on the alert in order to ascertain who was committing them. He also reported the robberies to Dr. Brown Word, the sheriff of the Parish of Vernon, and requested that he take some steps to discover the robber. Dr. Word had just opened an office back of defendant's drugstore for the practice of his profession. Defendant also informed certain employees of the bank in order that they might be on the lookout for the stolen money which he had marked for identification. The robberies apparently occurred systematically between 12 o'clock midnight and the time of opening the drugstore in the morning. Defendant personally conducted no investigation but he suggested to the sheriff, who was conducting the

investigation, that by stationing one of his deputies in a convenient place during the hours at which the robberies were being committed, it might result in the discovery of the robber. In accordance with defendant's suggestion, the sheriff posted one of his deputies in the waiting-room of his private office which adjoined defendant's office in his drugstore, there being a door between these offices. On the morning of March 24, 1936, the deputy, who had been posted in the sheriff's office, heard the front door of the drugstore open and what he took to be two persons walk in and one of them played a penny cigarette machine, after which the cash register rang as though a sale had been made. He then heard one of the men come back to the safe, work the combination and rattle some keys. He was unable to identify this man because the intervening door was composed partly of frosted glass but he immediately left his post and after walking a distance of about seventy-five feet outside the building, entered the front door of the drugstore in which he saw plaintiff and the negro porter. He immediately telephoned the sheriff, and the sheriff then called at defendant's home and both proceeded to the drugstore. On examining his safe, defendant discovered that one twenty and two five dollar bills were missing. The sheriff suggested to defendant that with his permission he might search his employees, defendant replying that if it was all right with them, it would be all right with him. The sheriff then requested plaintiff and the other white employee of defendant to step into his private office,

which they did; the sheriff closed the door of the office, and, in the presence of his deputy, told plaintiff and the other employee of defendant that some more money was missing from defendant's safe, and that if they had no objection, he wanted to search them that they might be exonerated. Both plaintiff and defendant's other employee agreed to this. The sheriff's deputy searched plaintiff and the sheriff searched the other employee. As the search proceeded plaintiff apparently got excited and very angry. He stated that it was the first time he had ever been searched and that he wanted the world to know that he was not a thief and he began, of his own volition, to take off his clothes, stripping himself down to his underclothes. He also insisted that the sheriff and his deputy go to his home and search it. Both the sheriff and his deputy informed plaintiff that they were not accusing him of anything and that he was not under arrest. Later the sheriff searched defendant's negro porter. At the conclusion of the search plaintiff requested the sheriff to notify defendant to pay him off. Plaintiff telephoned his wife to come for him in their car, which she did, and plaintiff then left the drugstore. Later that night Dr. Word asked defendant what he was going to do about plaintiff. Specifically his question was: "Do you reckon Goodwin is going back to work?" And defendant's reply was: "I don't know, I wish you would go and see." Dr. Word accordingly called at plaintiff's house but plaintiff was absent and he spoke to plaintiff's wife. Subsequently the same night defendant called at plaintiff's home where,

in plaintiff's absence, he spoke to his wife and requested her to tell her husband to come back and go to work as there was some talk going on on the streets of the town and that if plaintiff went back to work it would "straighten everything out." Plaintiff's wife stated that she did not think her husband would go back to work, to which statement defendant replied: "All right, it doesn't make any difference to me." Plaintiff never went back to work for defendant, but a few days after he had left defendant's drugstore, he secured employment at another drugstore in the town of Leesville and was so employed at the time of the trial of the case in the district court.

█ No affidavit was made by defendant charging plaintiff with any wrongdoing. No warrant was issued for plaintiff's arrest and, in fact, plaintiff was never placed under arrest. No malice whatever was shown. Defendant is the owner of the drugstore in which the robberies were committed. He complained to the sheriff, which was what any prudent person would be expected to do under the circumstances. The fact that the sheriff, in the course of the investigation which he undertook, searched defendant's employees, including plaintiff, with their permission, without result, cannot impose any liability upon defendant. The sheriff apparently acted in good faith and in an honest attempt to perform his public duty. It is unfortunate that plaintiff was subjected to some inconvenience and humiliation in the course of the sheriff's investigation, which happily resulted in the exoneration of plaintiff,

but defendant is not answerable in damages therefor.

■ Plaintiff's charge of slander is based on defendant's alleged statement to plaintiff's wife and to two other persons, at different hours, on March 24, 1936, that plaintiff had stolen one twenty and two five dollar bills from defendant's safe. We do not consider it necessary to review the testimony adduced on this phase of the case. It suffices to say that defendant, testifying in his own behalf, denied the statement attributed to him, and his denial is supported by the weight of the testimony and the surrounding circumstances.

For the reasons assigned, the judgment appealed from is affirmed.